Welcome to the Fifth Circuit. This is the first day of a week of good cases. Honored to be sitting with Judge Wiener and Judge Wilson. We will hear three arguments. We'll probably take a break after the second one to allow much of our audience to leave. You can see that we are lucky today to have a high school class visiting and I want to thank them and their teachers for making this possible. And hopefully the cases you will hear will be edifying and you will hear how important it is for us that lawyers help us resolve them as best that we can. So without any more I'll call the first case of the day 20-20094 U.S. v. Meyer and Polanco. We will hear first from Ms. LaCaio. May it please the Court. My name is Brittany LaCaio and I represent the appellant Carmen Meyer. After analyzing the facts in the law regarding this case. We're going to stop you right away just because you need to speak up and a little slowly so we can get to the whole courtroom. Okay, thank you. I believe you'll find the conviction for kidnapping should not stand on the record before this court. I'm here to discuss two issues with the court today. First that there was insufficient evidence for a properly instructed jury to have convicted the appellant of the federal kidnapping offense. There was legally insufficient evidence to show that Meyer traveled in interstate commerce in committing or in furtherance of the commission of the offense. Additionally federal kidnapping cannot be by the voluntary act of a victim traveling in interstate commerce even if it's induced by deception and failing to require the kidnapping occur prior to the transportation in interstate commerce. Also there was legally insufficient evidence that the kidnapping took place in the United States before Meyer traveled in interstate commerce. And lastly on that the jury acted knowingly contrary to law by inveigling Ollivier's before traveling in foreign commerce. So you're challenging that there was enough proof for the kidnapping offense, its elements. You're also challenging that there was enough proof for federal jurisdiction. Yes. And that challenge contains within it a challenge to the legal instructions describing what the jury had to find beyond a reasonable doubt. Is that correct? That's correct, Judge. But you agree that you didn't object to the instructions that were given? That's correct, Judge. So we're only reviewing that legal portion for plain error? Yes, Judge, that's correct. Second, and it also relates to the first issue, is that the failure to adequately present the jury with the law on the kidnapping charge. And regarding that there was four important requirements for a conviction on the federal kidnapping charge that were not presented to the jury. That the defendants travel in foreign commerce must be done in committing or in furtherance of the kidnapping that was not in the jury charge. Now it was in the indictment. Yes, Your Honor. The indictment said that the defendant had to travel in furtherance, correct? It was in the indictment, yes. But it was not listed in the indictment. Well, but the jury charge said that they did have to find that the defendant traveled, your client traveled. The jury charge simply didn't say in furtherance of the offense, correct? Yes, Your Honor, that's the issue. And where in your brief, your principal brief, in a page would help me, do you allege that that is the reversible error? Or did that only come up in the reply brief? I don't have the page. Maybe when you get back up in rebuttal argument you can get the page right. Because I thought your principal brief argued that the interstate foreign commerce element had to be the victim's travel. That was additional argument and raised in my initial brief, but I have, you know, in my reply brief I did acknowledge that the amendment, there was an amendment subsequent to the cases that I cited. But if that's when you realized it, and I don't want to get too technical, but you can't raise a new legal argument ordinarily in the reply brief. What's your response to that? We're not raising a new argument. The issues were raised as regarding the legal insufficiency or the insufficiency of the jury instructions in this case. It's just additional arguments in support of that. And so we're just responding to the government's argument in our reply brief. And so the second issue regarding the jury charge is that the kidnapping does not occur by the entirely voluntary act of the victim traveling an interstate or foreign commerce, even though it's induced by interception. The third is that the unlawful act must take place in the United States before Meyer traveled to interstate commerce. And fourth is that the kidnapper's intent must have been formed prior to the transportation in interstate commerce. In this case, it was plain, clear, and obvious under Fifth Circuit precedent. And we believe specifically in this case... Your client took the stand, and your client said that when she traveled along with the victim, she did not travel with the victim in this case. That's the main issue, is this case is very much controlled and governed by the McInnes case in this court? She said she didn't have any knowledge or involvement, but there was testimony for the government, I thought, the victim himself, who said, quote, Meyer put me there. We've been working with her a long time. Right? He said the captors told him that she put him there and that she'd been working with the cartel for a long time. I think the distinction in this case is drawn in that when Meyer traveled, she traveled with Salinas, she didn't travel with Olliveras, she traveled alone. There was no other alleged kidnappers with him. He was completely alone when he traveled across from Texas to Mexico. Meyer traveled with Salinas. The allegation... Didn't she sort of induce, entice, encourage him to cross the border and go to the meeting? In other words, I mean, that surely would be enough to have furthered the conspiracy or the offense, right? Well, no. Not under McInnes, first of all. McInnes said that it's not enough if a person travels voluntarily to Mexico. But did he travel voluntarily on her encouragement? In other words, I mean, he went in part because she had... I can't remember what she said exactly, but she basically facilitated him going. Well, the allegation made by the government in this case was that Meyer had informed the cartel that Olliveras was involved in the sham regarding the loads and that she had informed Olliveras that the cartel wanted to speak to him in Mexico. The fact that she did not tell him that they knew that he had stolen from them, that that, in essence, was enveigling him or deceiving him to go to Mexico without that knowledge. Now, in McInnes, this court specifically addressed a very, very similar fact pattern. And that's what is holding this case, and that's what this case can be limited down to, is that that's binding on this court. And this court said in McInnes that the fact that somebody is deceived to travel alone to Mexico is not sufficient to hold somebody and convict somebody of kidnapping. But is that quite the case here? Because even though she wasn't in the car with him, they went separately, they all went to the same place, to this lunch or whatever it was. In other words, the fact that she went to Mexico also, again, induced him to go, whether under his own vehicle power or riding in the car with them. Does that make a difference? I would say not under McInnes, Your Honor. The court has, even in McRary, has re-urged that they decline to extend the kidnapping statute beyond what it already is that they found in McInnes, which is that if you deceive somebody to travel across interstate or foreign lines, by deception, if they are alone without anybody with them, which they didn't even say, they specifically declined to even to hold it to that, even if somebody else is with them, that that is not enough. It is not enough that they're deceived to cross state lines. The conspiracy to kidnap somebody in a foreign state is not enough. They say that it has to be, the kidnapping has to occur in the United States and that they have to travel to Mexico. But it can't be enough that there's a conspiracy or deception that they travel alone to Mexico, that that's not sufficient under McInnes. And that's what I believe this court can limit its holding just to that. You've got rebuttal time. Thank you, Your Honor. Mr. Prezziosi. Good afternoon. My name is Stephen Prezziosi. I represent the appellant, Mr. Daniel Polanco. Your Honors, the evidence in this case was insufficient for several reasons. The government failed to prove that there was a conspiracy to distribute cocaine. They failed to prove that Mr. Polanco had any knowledge that such a scheme was occurring. They failed to prove that he received any money in compensation as part of his participation in this scheme. Most importantly, Judge, the government failed to prove that on April 20, 2013, anyone possessed cocaine or that there was any cocaine in the green Mazda. Now, I want to talk about each one of these elements. Before you talk about each individually, which will be helpful, he took the stand too, just like Ms. Meyer did. He did. And he denied any, he said he was, basically he said he'd just spoken to the backpacker and was given a tip about drugs in a car. He was given a tip that there would be small cars used on Highway 281. Right. And then he said he never asked to report from the government witness, what's his name, Bilardo? Balderas. Balderas. Balderas. Balderas. So he gave his story, which was an innocent one, but can't we, wouldn't we simply because they might have disbelieved him, his false exculpatories? No, Your Honor. There has to be evidence. But evidence is, when a defendant chooses to take the stand, isn't it sufficient alone that the jury may have disbelieved his testimony? If it's not, what's your case that says that? No, the government has a burden. Right, and they met their burden by cross-examining your client. No, they have more than that, Judge. But that's the case. Beyond a reasonable doubt, every element. Right, and he denied the elements. He denied every element. And the jury was free to disbelieve his denial. Whether they believed him or not, that does not change the government's burden. I'm not saying it changes its burden, but it can suffice to support its burden alone is what I'm pressing you on. I can't agree with that. Here's why. Okay. The government, the burden never shifts. Correct. Whether Mr. Polanco testified or did not. And the point I want to make, that I try to thematically convey throughout my brief, is that there is a distinction, an important distinction, between circumstantial evidence and the absence of evidence. I tried to provide the court with a visual metaphor. I don't know if I did that. Well, you did, and I'm pressing you, and that doesn't mean that I don't agree with you, but when Ballardo, is that the fellow's name? Which witness are we talking about, Your Honor? The police officer that... Balderas. Balderas. Your client allegedly called him and said, I need to see the report. That's what he testified to, and then your client gets on the stand and said, no, I did not ask for that report. I didn't say that. Well, that report, I think the report is, the contrast between their testimonies does not bring the government over the finish line. Okay. And here's why, Judge. The government has to prove there was an agreement to conspire to possess and distribute cocaine. They didn't do that. They offered text messages. Now, the text messages were just the fact that they were sent and received. We don't know what they said. Even though the government had ample time, they had two years, this investigation was going on for two years before anyone ever heard the name Daniel Polanco. They could have subpoenaed those text messages. They did not. The agreement, the knowledge that Daniel Polanco was participating in this alleged... This was the jury argument. This was the argument made to the jury. I don't mean to push you ahead, but just time is short when you split. You have a specific 404B and a specific confrontation clause issue sort of embedded in the sufficiency. Were you going to press those or rest on the breeze? Let's do those. I do want to talk about them. Okay. Because I think both of them are really emblematic of this absence of evidence. And the government argues very eloquently that our case was, that their case was entirely circumstantial. And Judge, I want to say that the absence of evidence is not circumstantial evidence. And both of those arguments are really emblematic of the entirety of the government's case. And here's why, Your Honor. The government put in a report of this assault, this 404B. This is point three of my brief, Your Honor. This assault that Mr. Polanco is not named in. Again, the absence of evidence. And there was a little bit of a bait and switch here, Your Honor. They argued on their direct case that this evidence of this report of this assault should be used to impeach this witness, Monica Garcia, the ex-girlfriend of Mr. Polanco. She took the stand. She basically recanted the grand jury's testimony. They wanted to impeach her. They wanted to impeach her. She was subpoenaed. She didn't voluntarily appear. She appeared on the government's direct case. But how would impeachment of her really have affected anything? And here's where the bait and switch is, Your Honor. They didn't argue in their closing statement that this was evidence to impeach Monica Garcia. What they argued with that report, that 404B evidence, was this is evidence that Daniel Polanco threatened and intimidated a witness. This is evidence of his guilt. That's the bait and switch. That's the harmful error. Did you object in closing? They objected. They objected. They objected to the 404B. He didn't object in closing. No. But he objected to the admission of the 404B evidence. Right. And then they used it in a very, very different manner, despite outside the scope of the court's limiting instruction that this is being used for impeachment evidence. So they went outside the scope of the court's instruction, Your Honor. And it was objected to at the time of the government's direct case. Again, Judge, Polanco was not named in the report. And on direct testimony, that witness adamantly denied that it was Daniel Polanco that participated in this. It wasn't even an assault report. It was an incident. She didn't really deny that it was him. She said she didn't name anybody. She didn't name him. What I remember of her testimony was very cagey. She said, well, no, there wasn't an assault at all. I was falling down drunk. But, I mean, the report's there. The report, it wasn't a report. They called it something. It was an informational statement. It wasn't a report. There was a statement made to authorities that there was a sexual assault. And here's the grander – it wasn't a sexual assault. Here's the grander point, is that Daniel Polanco was not named at all. And she denied that he participated in any assault. Again, the absence of evidence. No text messages to show that there was an agreement or he had knowledge. No naming him in the report. And finally, on the Confrontation Clause, we have this witness, this backpacker, Miguel Andaya Aguirre, who was deported, whose statements or his silence came into evidence, and the defense could not cross-examine him. This is a Confrontation Clause. Speak a little bit about how the lack of statement equals a statement in terms of the Confrontation Clause. Sure. Judge, I see my time is up. I can address this on rebuttal or I can address it now. Just give me an answer right now, I guess, and you can follow up on rebuttal. But I'm just interested in the fact that it's not so much that the backpacker made statements, it's that the witness testified that he didn't say this, that. He didn't say. Silence is communication. Well, it can be, but what's your case to support it in this instance? Many forms of silence. Under the law, many forms of silence constitute communication. We have in our law, consistently, we have the failure to identify a suspect is admissible evidence. The failure to point someone out in a lineup, say, is admissible evidence. The failure to point someone out in a photo array is admissible evidence. Silence is a form of communication that was testimonial communication in this case. Where is your case that shows that the silence in this instance is testimonial communication subject to the Confrontation Clause? Judge, I cited a case called Kazee. I don't know if I'm pronouncing that right. But in that case, the detective intimated at the statements. He didn't directly quote the statements of the witness, the Confrontation Clause violation. He intimated that he was, in a very roundabout way, he was referring to those statements. It's Kazee, and the citation, Your Honor, is, it's in my brief under page .4. I'm not remembering the citation off the top of my head. In that case, Your Honor, same thing. The silence of the witness constituted testimonial evidence. And I see that my time is up. I just wanted to reserve some time for rebuttal, Judge. You have your full time for rebuttal. We'll hear from the government. Ms. Mannis. Thank you, Your Honors, and may it please the Court. Audrey Mannis for the United States. This appeal obviously involves multiple defendants with multiple issues. But the bottom line is simple, this Court should affirm. The evidence was sufficient to support the counts of conviction for both defendants. And the District Court did not err on any of the challenged evidentiary rulings or on the jury instructions. Let me address first Ms. Meyer's issues on appeal. She challenges the sufficiency of the evidence on the kidnapping count. The law is clear, and since 2006, it penalizes a person who unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away, and holds for ransom, reward, or otherwise, a victim. And then there's three ways to satisfy jurisdiction. One of them, which the government relied on here, is when the offender travels in interstate or foreign commerce. And we agree, it's in committing or in furtherance of commission of the offense. Okay, so here, the jurisdictional hook was charged as the defendant travels in furtherance of the commission of the offense? Yes, Your Honor. So you can't rely on a cell phone as an instrumentality or victim? That's right, Your Honor. And I apologize to the extent my brief suggested otherwise. I had pointed out that the cell phone use was just another, is another change in the law. And you did charge the defendant in furtherance correctly. Then if I remember, the government's recommended jury instruction was victim focused. That was odd. But it's the old law, so that's fine. It isn't what you charged. And clearly, by conference time, you'd corrected it. Yes, Your Honor. I couldn't find where the discussion relating to the correction from your proposed instructions to the final. Did you ever, do you see that in the record? I do not see it in the record, Your Honor. Okay, so the crux of this case is whether or not it's plain error for a judge not to tell the jury that the defendant's travel has to be in furtherance of the kidnapping. It can't just be unrelated travel. So, am I right in describing what the issue is? Yes, Your Honor. After it came out in the reply brief, I believe that's what the issue is. And I did not understand that to be the defendant's challenge until the reply brief. But, assuming this Court entertains that, yes, that is the issue. Well, you would, but let's explore that a little and she'll stand up. I mean, she accepted that pursuant to Rule 30, we have plain error review of a defective instruction. Absolutely. But then there's the separate issue of whether we would review anything that comes up for the first time in the reply brief. Is the government's position that this did not come up in the principle brief, therefore it's unreviewable altogether? I believe this did not come up in the principle brief. The principle brief was focused on the jurisdictional hook has to be the transportation of the victim. So, the government's first argument is they've relinquished it, pleading defect. The second argument, which you can continue with, is even if it was preserved for plain error review, it's not plain error review when, this is a bit of a stretch for me to accept, when the travel could have been to, if Mexico's got Disneyland, could have been to Disneyland? Well, Your Honor, it's not plain error here because ultimately there's no harm and you can invoke the fourth prong as the court did in Daniels. Okay. Well, don't say you could invoke. So, would you agree it's error and it's clear error? I agree that it is error and it's clear error. It should have said in furtherance of the offense. Okay. All right. That's exactly where I think we are, third and fourth prong. And for that reason, this Court should affirm on third and fourth prong because, as Your Honor noted, we charged it in furtherance of the offense, we argued it to the jury in furtherance of the offense and the evidence supports that Ms. Meyer traveled to Mexico for this meeting in furtherance of the offense. Okay. I mean, good for you to confess error but not admit that it's reversible error and that's fine. I was thinking the same thing. It's a big record and so I was trying to think how in the world was an experienced district court judge not read the text of the statute and read the pattern instructions? And so, I was thinking let's go and see when Judge Ellison read this aloud to the jury with lawyers present and to my reading of the record, he never read the law at all. Is that your understanding? He handed the jury the elements of the crime. I believe that is right, Your Honor. Can you think of any case anywhere in this country where that's not structural error? Now, it's clearly not the defendant's argument but understanding Rule 30 and due process, can a judge just hand the law to the jury and no one ever verifies whether the jury even read what was handed to them? I do not have a case on that, Your Honor. You saw that in this case? I did, yes. It isn't raised? It is not raised. If I may continue with the kidnapping offense. So, the jury instruction here is harmless because the element was satisfied. Ms. Meyer, under pressure, told one of the drug dealers in Mexico that yes, they were stealing drugs from the cartel. He said, I want to see Oliverde's, get him here. Under pressure, she calls Oliverde and says, come to this meeting, we've got another big deal. And then she travels to the meeting. Separately from him? Separately from him. The crux of her argument to you, Counsel, is we're bound by McGinnis and the separate travel means it doesn't work. That's incorrect. McGinnis and McCrary are both pre-2006 cases. They're before the amendments adding these additional jurisdictional components. It's been acknowledged by this Court and by others that in 2006, we expanded the jurisdictional bases and one of them now is we can rely solely on the defendant's interstate or foreign travel in furtherance of the commission of the offense. The other two persons charged with the kidnapping, they're fugitives? That's correct. One of them is presumed dead and the other is, his location is unknown. But they were the two others that attended the meeting in Mexico. And the jurisdictional hook on them would be the same thing, that the defendant traveled. They had less to do with him traveling, arguably. Correct. Correct. But it would still qualify. Yes. What's your, is there a good circuit case since this law was amended on sort of these intricacies of fees aiding and abetting by inveigling? I would look at two cases, Your Honor. One is actually a case from the Fourth Circuit, United States v. Wills. And this was pre-2006, but they took a different position than the Fifth Circuit on this issue of whether the victim needs to be transported, seized and then transported. But Wills is helpful. It's 234 F. 3rd, 174. And then for a post-2006 case out of this circuit, probably United States v. Anderson, 819 Federal Appendix 220. And that one dealt with a cell phone as the jurisdictional hook. But it has a good discussion about the changes in the law and not reading more elements into the statute than what's now required. And I think that's what the defendant is trying to do here, is read additional elements into the statute that are not there in the text. Unless there's any other questions on the kidnapping issue, I can turn to Mr. Polanco's sufficiency in evidentiary ruling challenges. Mr. Polanco, like Ms. Myers, argues that the evidence was insufficient to support his counts of conviction. However, when we look at the record, the evidence is there. It shows that Mr. DeLeon, his co-conspirator, possessed with intent to distribute multiple kilograms of cocaine. And Mario Solis was also involved. He is the driver of the green Mazda. So what happens is, DeLeon says, I've got a drop I want to take care of. He calls Solis. Solis buys the car. DeLeon tells Solis, my border patrol friend is going to call the car, is going to report the car to the cops. Solis stocks the car with sham cocaine. And yes, there is evidence that there's trace amounts of cocaine. There's a stipulation in the record saying that the 17 bundles found in the car did test positive for cocaine. Solis drops the car off at this abandoned gas station off of 281. And then Polanco and his girlfriend, Monica, drive by. In fact, they can't find the car at first. Solis says he's getting calls from DeLeon. DeLeon's mad because they can't find the car. The cell phone records show that Polanco is in the area for 30 minutes, which is inconsistent with his testimony that he's driving 281 straight to San Antonio. And then, of course, we do have Polanco saying, I called in the car. We have Officer Balderas who receives the call. Says, hey, this was a little suspicious. I know him, but I haven't talked to him in months. He's never called me with a tip before. And then Polanco follows up a couple days later. Says, oh, I need the police report and I need photos. And Balderas sends them to him. And Balderas is understandably nervous because this is unusual behavior. All of those, all that evidentiary testimony shows that Polanco aided and abetted DeLeon's possession with intent to distribute cocaine. There was no proof that he actually was paid off for this. There was just the suggestion that maybe that envelope that he received contained it? There is a suggestion that he received a large amount of cash for it. That's not an element of the offense. My question is, once Polanco takes the stand and if he's disbelieved, would that support sufficiency alone? Or do you agree with co-counsel that it would have to be more? No, I agree with you, Your Honor, that that would support sufficiency alone. A false denial? Absolutely. And the jury's, it's wholly within the jury's province to determine credibility. What about opposing counsel's statement that at closing the 404B to impeach the girlfriend was misused to be substantive guilt? I disagree, Your Honor. The 404B evidence to the extent it's called 404B evidence was used throughout both for impeachment and to show witness bias. And we know the Supreme Court has said and this Court has said multiple times evidence of witness bias is almost always admissible. Here we have a girlfriend who has cagey inconsistent testimony and this isn't the first time she's done it. She does it to protect her now ex-boyfriend but there's a pattern of behavior it demonstrates witness bias. And therefore the district court didn't rule in admitting it. Nor did the district court err in the confrontation clause issue. I agree with my opposing counsel that sometimes silence is a statement or assertion. Here it was not. If we look at the test from this Court in United States versus Haman we ask three questions. Did the evidence include a testimonial statement by a non-testifying witness? Was it offered for the truth of the matter asserted? And was the witness available to testify? We agree the witness was not available to testify. However a statement is a person's oral or written assertion or non-verbal conduct if the person intended it as an assertion. Here there's no intent in this silence. There's no yes or no there's no head nod there's no message conveyed in the silence. Do the cases give a line that on this side of the line it's not communication it's not a statement on this side of the line it is? I don't think there's a clear line in the cases your honor. I think it depends on the facts and circumstances and the questions being asked. What's your most supportive case for this circumstance? Hmm probably United States versus Lewis I cited in my brief it's 902 F. 2nd 1176 there the statement was actually a question it wasn't silence but the question wasn't I wouldn't shouldn't even call it a statement the question wasn't a statement that's probably my best case on it but even if for some reason the court decided that the silence here was a statement that you then have to ask was the statement offered for the truth of the matter asserted and it wasn't however I characterize it silence as saying there was no small sedans being used on 281 the significance of the statement here rested solely in whether agent Maris the other border patrol agent heard the juvenile backpacker say anything did he did he give you a tip also or not no he didn't he didn't say anything to me he was the I don't think that the silence here meets either of these tests the only question that it meets under Haman is the witness wasn't available to testify but there's no statement and it wasn't offered for the truth of the matter asserted one question back on Meier we talked a lot about the jurisdiction element what about just the element of her holding him what was the government's proof that Meier is it an aiding and abetting theory yes we did charge aiding and abetting and we argued that to the jury so the jury certainly could have found on aiding and abetting I also think Meier held him by not you know by her passive action she made sure she was away when he was physically seized that's a creative interpretation of hold but then she assisted in obtaining the ransom she said don't call the cops she made sure I agree there's some issues on the ransom I wasn't asking about that but that would be after the fact but he's still being held it's a continuous offense so he's being held for ransom or otherwise she's protecting herself and making sure he stays detained but the only thing she appealed was the jury instruction on kidnapping that's right your honor yes she had the issue in her the focus in her principle brief again was on the victims travel across whether or not she took him across the foreign border and that's not  here thank you we'll hear rebuttal please the court your honor I just wanted to first address the the factual situation nobody ever testified that he was going to be kidnapped once she says it and they disbelieve her they can believe the opposite sufficient evidence to support her testimony was that that he heard a conversation that he believed was between meyer and one of the kidnappers in mexico and he believed that based on that she had informed that he had stolen drugs nobody there's no evidence that she knew that that was the situation again said that she put me there informing him that the drugs had been taken not by setting up the kidnapping okay yes yes she had told him that that would be one interpretation the jury has reason fully able to conclude the other but what is she correct is   the likely case that the victim travel case before that yes but that is the argument that made right before the basis the government said that the definition of the crime had been broadened by an amendment passed to expand protection of foreign officials and other official guests of the United States. The court said while the clarity of the description of the federal offense as kidnapping followed by interstate transportation was blurred there is nothing in the history of the amendment to indicate an intention to convert the statute into a prescription of interstate transportation in order to  reduce   on the public. The court said the jury instructions were not sufficient. In preparation for today's oral argument, I scoured the record looking at the government's brief and the trial transcript. What I did not find was any evidence of the presence of cocaine. The roadside test showed that there was methamphetamine not cocaine. The government's brief cites to a stipulation outside the trial record. Anything past page 3,000 is after the trial was over. The citation in their brief is at page 4,000 and something. I scoured the record for a stipulation regarding the confiscation of April 20, 2013. No such stipulation was ever read to the government.  did not find any evidence of cocaine being present in that green Mazda or present somewhere else. They had a thin veneer of cocaine and the conspiracy was to have no cocaine. There was methamphetamine. This is the stipulation I'm talking about.  67H. I looked through the entirety of the record. I saw this reference in the government's brief. The reference in their brief is at page 4,000 something. The trial was over at page 2,900 or 3,000. I looked through every single stipulation in the record. No stipulation regarding April 20, 2013 was ever read to the jury. Do you agree the jury instructions were never read aloud to the jury? You chose not to raise that as an issue. It wasn't objected to. I thought sufficiency is a much stronger argument. I thought that was strong in   I did not hold the evidence against the government's case. Stipulation there must be evidence. Somebody must say somebody possessed cocaine. It was not cocaine. Can't you be a member of the committee on drugs?   believe       silly. I think it is wrong. I think there must be evidence for it. The evidence must be